FILED
2020 DEC 17
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| VICTORIA L., <br><br> Plaintiff, <br><br> vs. <br><br> ANDREW M. SAUL, <br><br> Commissioner of Social Security, <br><br> Defendant. | REPORT & RECOMMENDATION <br><br> Case No. 1:20-cv-00029-DBP <br><br> Magistrate Judge Dustin B. Pead <br><br> District Court Jill N. Parrish |

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (Act) (ECF No. 24; ECF No. 27). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on December 3, 2020 (ECF No. 29; ECF No. 30), the undersigned concludes that the Commissioner's decision is supported by substantial evidence and is legally sound. Accordingly, the court RECOMMENDS that the Commissioner's decision be AFFIRMED.[1]

## I. STANDARD OF REVIEW

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C.

---

[1] On June 26, 2020, the District Court assigned this case to Magistrate Judge Pead pursuant to a 28 U.S.C. § 636(b)(1)(B) referral. (ECF No. 16.)

§ 405(g); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). As the Supreme Court reiterated, the substantial evidence threshold "is not high" and defers to the presiding ALJ, "who has seen the hearing up close." *Id*. at 1154, 1157. The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact finding—itself a deferential standard. *See id*. at 1154 (*citing Dickinson v. Zurko*, 527 U.S. 150, 152 53 (1999) (comparing the substantial evidence standard to the deferential clearly erroneous standard). Substantial evidence is "more than a mere scintilla" of evidence. *Id*. (quotation omitted). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation omitted). In reviewing the ALJ's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

## II. BACKGROUND

Plaintiff applied for benefits in November 2015, alleging disability beginning August 2015, due to Crohn's disease, fibromyalgia, back pain, and various mental impairments (Certified Administrative Transcript (Tr.) 280-90, 305-08).

After a hearing (Tr. 45-83), Administrative Law Judge Chris Stuber (ALJ) issued a decision on October 15, 2018, finding Plaintiff not disabled (Tr. 24-38). The five-step sequential evaluation for assessing disability directs the ALJ to consider: 1) whether the claimant is currently working; 2) if the claimant has a severe impairment; 3) if the impairment(s) meet or medically equal an impairment listed in Appendix 1; 4) if the impairment(s) prevent the claimant from doing past relevant work; and 5) if the impairment(s) prevent the claimant from doing any

other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4).[2] At step two, the ALJ found that Plaintiff had the following severe impairments: Crohn's disease, irritable bowel syndrome status post bowel resectioning, fibromyalgia, degenerative disc disease, anxiety disorder, and major depressive disorder (Tr. 27). *See* 20 C.F.R. § 404.1521. Between steps three and four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a reduced range of unskilled light work (Tr. 30). At step five, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, thus Plaintiff was not disabled under the strict standards of the Act (Tr. 37).

On January 27, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 3-8), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). This appeal followed.

### III.   ANALYSIS

On appeal, Plaintiff alleges the ALJ erred as a matter of law by failing to assign more weight to treating physician Dr. Eliason's opinion, and by finding that she could sustain full-time work (ECF No. 24, Plaintiff's Brief (Pl. Br.) 7-16). Because the claims are inherently intertwined, the Court will address both arguments together.

---

[2] All references to the C.F.R. are to part 404 of the 2018 edition, which governs claims for DIB and was in effect at the time of the ALJ's decision. Parallel citations to part 416, which governs claims for SSI, are identical and will not be included.

### A.     The ALJ appropriately weighed Dr. Eliason's opinion.

Prior to her alleged onset of disability in August 2015, Plaintiff experienced chronic inflammation in her colon and underwent a bowel resection surgery in 2009 (Tr. 623, 702). In October 2015, Plaintiff began treatment with gastroenterologist Dr. Eliason for her Crohn's disease (*see, e.g.*, Tr. 649-50). Dr. Eliason noted that Plaintiff's Crohn's disease was not well controlled on Asacol (an anti-inflammatory bowel disease medication) and he placed her on an immunosuppressant medication, cautioning that it would take three to four months to begin working (Tr. 649). Dr, Eliason also prescribed a steroid regimen (Tr. 649). In January 2016, Plaintiff was still experiencing diarrhea and stomach pain; Dr. Eliason discontinued the immunosuppressant and, by February 2016, Plaintiff was in the process of going on Humira (a biologic treatment to reduce inflammation) (Tr. 657). By April 2016, Plaintiff was "doing okay" on Humira (Tr. 798), however, in September 2016, November 2016, and September 2017, Plaintiff presented to the emergency room (ER) for exacerbations of her Crohn's disease (Tr. 727, 718, 686-90). A few months later, in December 2017, Dr. Eliason noted that Plaintiff's Crohn's disease was "maintained" on Humira (Tr. 773).

In March 2018, Dr. Eliason wrote a letter indicating that, at the December 2017 appointment, Plaintiff "was doing much better" and his "impression was that [Plaintiff]'s disease [was] fairly well controlled at this time" (Tr. 675-76). Dr. Eliason based his opinion on Plaintiff's normal C-reactive protein (a marker of inflammation) (Tr. 676). Dr. Eliason further noted that while in the past Plaintiff's disease was not well controlled and she probably missed a lot of work, at this time "her disease is fairly well controlled". (Tr. 676). In his letter, Dr. Eliason described the effects of Crohn's disease on "some people" and indicated that patients in

4

remission "tend to do quite well and can live fairly normal lives including working full-time" and performing responsibilities such as "lifting, carrying, sitting, standing, and walking in a work setting" (Tr. 675). Dr. Eliason further indicated that exacerbations caused by various issues (stress, using tobacco, infection), "may" require hospitalizations and steroids to put the disease back in remission. A "typical disease exacerbation" could lead to one to two weeks of missed work and "some patients" could miss one to three days of work (Tr. 676). Dr. Eliason summarized that Plaintiff "may" miss on average one to three days of work per month and, if having an exacerbation, "could" miss up to one to two weeks (Tr. 676). In his decision, the ALJ gives Dr. Eliason's opinion "some weight" but also finds the opinion speculative because it did not include Plaintiff's specific current limitations (Tr. 35).

Plaintiff argues the case should be remanded because the ALJ did not apply the two-step sequential process for determining the weight applied to a treating source opinion and failed to explain why the specific limitations regarding Plaintiff's inability to sustain work, as identified by Dr. Eliason, were not followed (ECF No. 26). *See* SSR 96-2p; *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003).[3]

The ALJ is tasked with determining an individual's Residual Functional Capacity (RFC), which is administrative and not a medical issue. *See* 20 C.F.R. § 404.1545(a)(1); Social Security

---

[3] Plaintiff's claim was filed prior to March 27, 2017, and therefore the new regulations, applicable to review of medical opinions, do not apply. *See Melanie Lynne H. v. Saul*, 2020 U.S. Dist. LEXIS 197128 (Dist. Kan. 2020). Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a) (2017).

Ruling (SSR) 96-5p, 1996 WL 374183, at *2; *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). The ALJ's assessment must be based on all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1545(a)(3). Here, the ALJ reasonably considered the entire record, including the medical opinions, treatment notes, and Plaintiff's subjective complaints (Tr. 24-38).

Dr. Eliason described how Crohn's disease could affect "some people" and stated that Plaintiff "may" miss days of work or "could" miss one or two weeks of work "if" she had an exacerbation (Tr. 675-76). Based on the record, however, Plaintiff was hospitalized due to Chron's disease flare-ups for six days over a two-year period; not for "one to two weeks" as Dr. Eliason speculated (Tr. 686-90, 718, 727). Thus, it was reasonable for the ALJ to reject Dr. Eliason's statements based on their speculative nature. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Indeed, the ALJ need only consider what effect Crohn's disease was *actually* having on Plaintiff's ability to work – not what *might* happen to other people with Crohn's disease or what *could* happen if Plaintiff had an exacerbation. *See* 20 C.F.R. 404.1545 (a) (the RFC is "physical and mental limitations that affect what you can do in a work setting. Your [RFC] is the most you can still do despite your limitations."). Here, the speculative statements offered by Dr. Eliason do not translate into functional limitations regarding Plaintiff's ability to work. *See Howard*, 379 F.3d at 949 (the claimant has the burden to provide evidence of his functional limitations); *see also Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (unpublished) (rejecting the argument that the

ALJ erred in evaluating medical source opinions: "neither doctor gave an opinion about the functional limitations, if any, that these conditions imposed"); *see also Bales v. Colvin*, 576 F. App' x. 792, 797 (10th Cir. 2014) (unpublished) (because the doctor's findings did not have any bearing on the claimant' s functional limitations, the ALJ did not need to specifically discuss those findings in setting her RFC).

Although Plaintiff attempts to support her argument that the ALJ erred in his treatment of Dr. Eliason's opinion by pointing to evidence of past Crohn's disease flare-ups and highlighting evidence that the ALJ did not include in his decision (Pl. Br. at 10-12), the ALJ "is not required to discuss every piece of evidence." *Wall v. Astrue,* 561 F.3d 1048, 1067 (10th Cir. 2009) (quotation and citation omitted); *see Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) ("There is obviously no requirement that the ALJ reference everything in the administrative record."). Moreover, the ALJ did, in fact, acknowledge Plaintiff's past flare-ups (Tr. 31-35). Indeed, the ALJ described Plaintiff's testimony regarding her 15-year history of Crohn's disease; her treatment in October 2014 and October 2015; her January 2016 follow up; her September 2016 ER admission; her flare-up in November 2017; her September 2017 hospital admission; and her December 2017 and May 2018 gastroenterology appointments (Tr. 31-34). *See Wall v. Astrue,* 561 F.3d 1048, 1067 (10th Cir. 2009) (the Tenth Circuit will generally find the ALJ's decision adequate if it discusses the uncontroverted evidence the ALJ chooses not to rely upon and any significantly probative evidence the ALJ decides to reject). And, while Plaintiff contends the ALJ should not have concluded that she could sustain full-time work (Pl. Br. at 13-14), her claim is simply a rehash of her argument regarding Dr. Eliason's opinion. Accordingly, for the same reasons outlined above, that argument fails (Pl. Br. at 14).

Finally, Plaintiff asserts that the ALJ should have included limitations indicating that she would be off task 10% of the day and would need two extra breaks throughout the workday (Pl. Br. at 14). No doctor, however, opined as to these limitations and Plaintiff does not point to any evidence in the record supporting her claim that these limitations should have been included in the RFC. The ALJ is not required to include limitations in the RFC that are not supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding no error when the ALJ relied upon a hypothetical question to the vocational expert that included all the limitations the ALJ ultimately included in his RFC assessment).

To survive judicial review, an ALJ's findings need only be legally sound and supported by substantial evidence—a threshold that is "not high." *Biestek*, 139 S. Ct. at 1154. Here, the ALJ's findings are legally sound and supported by substantial evidence and the court should not disturb the ALJ's decision. *Hendron*, 767 F.3d at 954.

## IV. CONCLUSION & RECOMMENDATION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

Copies of this Report and Recommendation are being sent to Plaintiff, who is hereby notified of her right to object. Plaintiff must file any objection to this Report and

Recommendation within fourteen (14) days after being served with a copy.[4] A failure to object may constitute waiver of objections upon subsequent review.

DATED this 17th day of December 2020.

_____
DUSTIN B. PEAD
United States Magistrate Judge

---

[4] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).